See further Sallade *v.* Gerlach, 54 Hun, 635 ; Wilcox *v.* Corwin, 117 N. Y. 500; Rittenhouse *v.* Creveling, 59 Hun, 626; Myers *v.* Hunt, 38 N. Y. St. Rep. 739; Comstock *v.* Hier, 73 N. Y. 269; Converse *v.* Cook, 31 Hun, 417; Hunter *v.* Herrick, 26 Hun, 272; aff'd, 92 N. Y. 626; Benedict *v.* Driggs, 34 Hun, 94; Church *v.* Howard, 79 N. Y. 415; Alexander *v.* Dutcher, 70 Id. 385; Ehrmann *v.* Scheuerman, 14 Daly, 411.

ROXANNA KELLEY, Appellant *v.* ANN AUGUSTA FOSTER *et al.*, Impleaded, etc., Respondents.

*Court of Appeals, March* 8, 1892.

1. *Banks. Liquidation.*—The liquidator of a bank cannot be held liable for a note of which there is no proof except its entry in the bills receivable book, in the absence of evidence of its payment to him, especially after the lapse of ten years since the payment of the last dividend by him to the stockholders.

Appeal from a judgment of the general term, second department, affirming a judgment entered upon a decision at special term, dismissing the complaint.

*W. A. Abbott,* for appellant.

*Calvin Frost,* for respondents.

HAIGHT, J.—This action was brought for an accounting.

In May, 1874, the Croton River National Bank, upon the vote of the stockholders, went into voluntary liquidation. Francis E. Foster, the defendant's intestate, was the cashier, and was appointed liquidator. He collected the assets, paid the debts, and then divided among the stockholders the full par value of the stock. Subsequently, and on the 11th day of December, 1876, he made an additional dividend of twenty-five per cent, and in 1881 he made a final settlement with a number of the stockholders, paying them an additional fourteen per cent, and taking from them a transfer of all their interests in their assets of the bank. He died in November, 1886, and this action was commenced on November 30, 1887.

The capital stock of the bank was $200,000, divided into 2,000 shares; James E. Kelley was its president, and the owner of 1,640 of the shares. On the 23d of June, 1877, he was adjudged a bankrupt, and William Forse Scott was appointed his assignee, who, on the 14th day of November, 1887, transferred all of Kelley's interest in the Croton River National Bank to the plaintiff, who is the wife of Kelley.

Upon the trial an order was made appointing a referee to take and state the account. The referee made a report finding a balance due the plaintiff from the defendants of $9,912.43. The special term set aside this report and made other findings of facts, and, as conclusions of law, that the estate of Foster is not liable for the claims set up in the complaint, and that the defendants should have judgment dismissing the complaint.

It appears from the books of the bank that there is:

Debit, bills receivable. . . . . . . . . . $39,828 17
Credit. . . . . . . . . . . . . . . . . 31,815 41

Balance, bills receivable. . . . . . . . $8,012 76

There also appears upon page 317 of the ledger, marked

" Profit and Loss Account," entries from which the following are the footings:

| | |
|---|---|
| Credit. . . . . . . . . . . . . . . | $72,386 16 |
| Debit. . . . . . . . . . . . . . | 50,765 10 |
| Balance. . . . . . . . . . . . | $21,621 06 |

It appears that this balance was made up as follows:

| | |
|---|---|
| Cash, March 26, 1881. . . . . . . . . . | $496 40 |
| Deposit in First National Bank of Brewsters. . | 2,279 36 |
| Bills receivable, as above. . . . . . . . | 8,012 76 |
| James E. Kelley, overdraft. . . . . . . . | |
| May 15, 1874. . . . . . . . . . . . . | 10,619 99 |
| John Drew, overdraught. . . . . . . . . | 45 00 |
| Read & Crosby, overdraft. . . . . . . . | 12 85 |
| J. J. Parks, overdraft. . . . . . . . . | 12 67 |
| Barnum & Co., overdraft. . . . . . . . . | 142 03 |
| | $21,621 06 |

None of the overdrafts have ever been paid. From the amount deposited in the First National Bank of Brewsters to the credit of the bank there was drawn by Foster, October 5, 1881, $1,250, leaving a balance of $1,029.36 still remaining on deposit, which belongs to the shareholders, and is not subject to the order or direction of the administrators of Foster.

A promisory note, drawn by C. Howes for $5,708.07, dated December 23, 1873, payable six months after date, to the order of F. E. Foster, at the Croton River National Bank, appears among the bills receivable, endorsed by Foster as $5,911.20, amount due at maturity June 26, 1874. Further than this the evidence fails to disclose the items composing the bills receivable.

It appears that Foster was a merchant, and that the Bank was kept in a part of his store; that there were two safes belonging to the bank, and that they had been used by him, to some extent, as the repository of his private papers ; that

during the trial the safes were opened and the contents examined, and there were found several papers in the form of ordinary printed deposit checks to credit profit and loss account, on which the amounts were entered in the handwriting of Foster. The amount of the Howes note, together with the amount appearing upon these checks, were charged by the referee to Foster, and such charge constitutes the chief subject of controversy on this review.

As to the Howes note, it has never been paid. It was given to Foster for goods purchased at the store, and at that time Kelley was his co-partner therein. It was payable at the bank, and, as we have seen, it was endorsed by Foster and was entered upon the book among the bills receivable. It is claimed that the inferences to be drawn from these facts are that Foster had caused the note to be discounted at the bank, and being its cashier, was chargeable with notice of its non-payment, and that he should be held liable as endorser, and that consequently it was a proper charge against his estate. It does not appear, however, that he ever caused the same to be discounted, or that he drew any money from the bank by reason of such discount. Had he done so, his account would have been credited with the amount of the note upon the books of the bank; but no such credit is made to appear; no suggestion has been made that the books were improperly kept; and under the circumstances, we are inclined to the view that inasmuch as the note was payable at the bank, he entered it among the bills receivable for convenience only, and had not charged the bank with the amount thereof.

The referee also allowed an item of $500 November 22, 1884, which amount appears upon one of the papers already alluded to as found in the safe. The heading is: " Croton River National Bank of Brewsters, N. Y. Bills receivable." Opposite the word " checks " appears the item " five hundred dollars." There was also found in the safe another paper, reading as follows :

"BREWSTERS, N. Y., *Nov.* 22*d,* 1884.

"Croton River National Bank pay to cash (supervisor's check), or order, five hundred dollars.

"$500.00                                    F. E. FOSTER."

We have no explanation of this item. The first appears to be a deposit check; the other a check upon the bank to pay cash (supervisor's check), same amount and the same date. If the former paper indicates that he has received from the bills receivable $500 to be deposited with the assets of the bank, the other paper would seem to indicate that he had again checked it out to pay a supervisor's check. Whether that was for taxes, or something else, does not appear. We are left to determine the facts from inferences alone, to be drawn from the papers. The trial court and the general term appear to have regarded these inferences as too vague and shadowy to sustain a charge against the estate, and under the evidence presented, the long delay in bringing this action, and the staleness of the plaintiff's claim, we must approve of that conclusion.

The other items questioned pertain to the principal and interest of the so-called " Town Hall note," some mention of which appears upon the books of the bank; but inasmuch as these items would not change the result, we do not deem it necessary to give them further consideration.

Disallowing the items for note, and for the $500, the charges against the estate as reported by the referee would be as follows :

Cash March 26, 1881. . . . . . . . . . . . . . . . . . . . $496 40
Town Hall note, interest, February 11, 1882. .    109 16
Town Hall note, interest, January 27, 1883 . .·    107 90
Town Hall note, interest, March 1, 1884 . . . .    107 90
Town Hall note, principal, April 1, 1884 . . . .  1,000 00
Drawn from First National Bank October 5, 1881.  1,250 00
Overdraft, James E. Kelley, May 15, 1874. . . .  10,619 99

                                            $13,691 35

Add interest to the date of the report and we have the following:

| Principal. | Interest. | Total. |
|---|---|---|
| $496 40 | $241 16 | $737 56 |
| 1,000 00 | 305 00 | 1,305 00 |
| 109 16 | 47 30 | 156 46 |
| 107 90 | 40 53 | 148 43 |
| 107 90 | 33 44 | 141 34 |
| 1,250 00 | 567 90 | 1,817 90 |
| 10,619 99 | 10,128 80 | 20,748 79 |
| $13,691 35 | $11,364 13 | $25,055 48 |

The plaintiff would be entitled to 1640-2000ths of the total principal and interest, less the amount of the overdraft of James E. Kelley, with the interest thereon.

1640-2000ths of $25,055.48 is. . . . . . . . . . . . . . . $20,545 49
Deduct overdraft and interest. . . . . . . . . . . . . . 20,748 79

Balance due estate. . . . . . . . . . . . . . . . . . .$203 30

The judgment should be affirmed, with costs.

All concur.